## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Reanna Peyton and R. Peyton Consulting LLC,

         *Plaintiffs,*

          v.

All American Recycling, Inc. and Michael Zambon,

         *Defendants.*

Case No. 23-cv-11885

Hon. Brandy R. McMillion

Hon. Kimberly G. Altman

## DEFENDANTS' MOTION TO
## DISMISS SECOND AMENDED COMPLAINT

Defendant All American Recycling, Inc. and Defendant Michael Zambon (collectively, "Defendants"), by and through their counsel, Brotschul Potts, LLC and Szura & Delonis, PLC, pursuant to Fed. R. Civ. P. 12(b)(6), for the reasons stated in their *Defendants' Brief In Support Of Motion To Dismiss Plaintiffs' Second Amended Complaint*, hereby ask that the Court: (a) grant this motion; (b) dismiss all counts of the S*econd Amended Complaint And Jury Demand* filed by Plaintiff Reanna Peyton and Plaintiff R. Peyton Consulting LLC; and (c) grant Defendants such other and further relief as the Court deems just.

Pursuant to Local Rule 7.1, despite reasonable and timely recent efforts, the movant was unable to conduct a conference regarding the relief sought.

1

Dated:  July 30, 2024

Respectfully submitted,

All American Recycling, Inc.
And Michael Zambon

By: _s/ Louis C. Szura_____
     One of Defendants' Attorneys

Richard L. Miller II
_rmiller@brotschulpotts.com_
Brotschul Potts LLC
1 Tower Lane, Suite 2060
Oakbrook Terrace, Illinois 60181
Phone:  312.551.9003
Fax:  312.277.3278
Illinois ARDC No. 6243507

Louis C. Szura (P71764)
_lszura@szuradelonis.com_
Szura & Delonis, PLC
29777 Telegraph Road, Suite 2475
Southfield, Michigan 48034
P:  248-716-3600
_Local Counsel_

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Defendants' Motion To Dismiss Plaintiffs' Second Amended Complaint** was filed this 30th day of July 2024 via the electronic filing system of the Eastern District of Michigan, which will automatically serve all counsel of record.

<em>/s/ Louis C. Szura</em>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| Reanna Peyton and R. Peyton Consulting LLC, | : | |
| | : | |
| *Plaintiffs,* | : | Case No. 23-cv-11885 |
| | : | |
| v. | : | Hon. Brandy R. McMillion |
| | : | |
| All American Recycling, Inc. and. Michael Zambon, | : | Hon. Kimberly G. Altman |
| | : | |
| *Defendants.* | : | |

## DEFENDANTS' BRIEF
## IN SUPPORT OF MOTION TO DISMISS
## <u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

i

# TABLE OF CONTENTS

Statement of Issues Presented …………………………………………… iii

Controlling or Most Appropriate Authority …………………………….... vi

Table of Authorities ………………………………………………………… vii

ARGUMENT ……………………………………………………………….. 1

      Rule 12(b)(6) Requires Plaintiffs To Plead Sufficient Facts …………… 1

I. Count I:  Plaintiffs Have Failed To Plead A Breach Of An Oral Contract ….. 2

II. Count II:  Plaintiffs Have Failed To Plead
A Breach Of An Oral Agreement That Violates
The Michigan Sales Representative Commissions Act ………………………... 8

III. Count III:  Plaintiffs Have Failed To Plead
Breach Of An Oral Contract To Pay Wages And Benefits…………………….. 10

IV. Count IV:  Plaintiffs Have Failed To Plead A
Breach Of An Oral Contract To Transfer Equity Ownership ………………….. 11

 V. Counts V and VI:  Plaintiffs' Fraud Claims Fail
Because They Are Not Based On A False Statement Of Fact ……………..…12

VI. Counts VII, VIII, and IX:  Because Plaintiffs Assert A Contract Exists,
They Have No Viable Promissory Estoppel Or Unjust Enrichment Claims …... 15

VII. Counts X and XI:  Plaintiff Peyton Has Failed To Plead
She Suffered A Recognized Adverse Employment Action …………………… 18

CONCLUSION ………………………………………………………….... 22

## STATEMENT OF ISSUES PRESENTED

1.      As to Count I, whether Plaintiffs have properly stated a claim against Defendant All American Recycling, Inc. for breach of contract to pay sales commissions.

> Plaintiffs' answer:  Yes.
> Defendants' answer:  No.
> The Court should answer:  No.

2.      As to Count II, whether Plaintiffs have properly stated a claim against Defendant All American Recycling, Inc. for violation of the Michigan Sales Representative Commissions Act.

> Plaintiffs' answer:  Yes.
> Defendants' answer:  No.
> The Court should answer:  No.

3.      As to Count III, whether Plaintiff Reanna Peyton has properly stated a claim against Defendant All American Recycling, Inc. for breach of contract to pay wages and benefits.

> Plaintiffs' answer:  Yes.
> Defendants' answer:  No.
> The Court should answer:  No.

4.      As to Count IV, whether Plaintiff Reanna Peyton has properly stated a claim against Defendants for breach of contract to provide equitable ownership.

> Plaintiffs' answer:  Yes.
> Defendants' answer:  No.
> The Court should answer:  No.

5.      As to Count V, Whether Plaintiffs have properly stated a claim against Defendant All American Recycling, Inc. for fraud.

> Plaintiffs' answer:  Yes.
> Defendants' answer:  No.
> The Court should answer:  No.

6.     As to Count VI, whether Plaintiff Reanna Peyton has properly stated a claim against Defendants for fraud.

Plaintiffs' answer:  Yes.
Defendants' answer:  No.
The Court should answer:  No.

7.     As to Count VII, whether Plaintiffs have properly stated a claim against Defendant All American Recycling, Inc. for promissory estoppel.

Plaintiffs' answer:  Yes.
Defendants' answer:  No.
The Court should answer:  No.

8.     As to Count VIII, whether Plaintiff Reanna Peyton has properly stated a claim against Defendants for promissory estoppel.

Plaintiffs' answer:  Yes.
Defendants' answer:  No.
The Court should answer:  No.

9.     As to Count IX, whether Plaintiffs have properly stated a claim against Defendants for unjust enrichment.

Plaintiffs' answer:  Yes.
Defendants' answer:  No.
The Court should answer:  No.

10.     As to Count X, whether Plaintiff Reanna Peyton has properly stated a claim against Defendants for violation of the Elliott-Larsen Civil Rights Act.

Plaintiffs' answer:  Yes.
Defendants' answer:  No.
The Court should answer:  No.

11.    As to Count XI, whether Plaintiff Reanna Peyton has properly stated a claim against Defendants for violation of Title VII of the Federal Civil Rights Act.

> Plaintiffs' answer:  Yes.
> Defendants' answer:  No.
> The Court should answer:  No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Anders v. Verizon Communications Inc.*, 16-CV-5654 (VSB),

2018 WL 2727883 (S.D.N.Y. June 5,2018)

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 10-CV-1341

JFB ETB, 2012 WL 748760, (E.D.N.Y. Mar. 7, 2012)

*Provision Group, Inc. v. Crown Toxicology, Ltd.,* , 2017 WL 11221433

(W.D. Tex. Oct. 19, 2017)

*Lawley v. Siemens*, 11-12822, 2011 WL 6000797, (E.D. Mich. Nov. 30, 2011)

*Kunica v. St. Jean Fin., Inc.*, 97 CIV. 3804 (RWS), 1998 WL 437153 (S.D.N.Y.

Aug. 3, 1998)

*Maraulo v. CitiMortgage, Inc*., 12-CV-10250, 2013 WL 530944

(E.D. Mich. Feb. 11, 2013)

*Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*,

CIV. 13-00669 HG-BMK, 2014 WL 2761744 (D. Haw. June 18, 2014)

*Ault v. C.C. Servs., Inc.*, 232 Ill. App. 3d 269 (3d Dist. 1992)

*Bd. of Educ. of Crete-Monee Cmty. Unit Sch. Dist. No. 201-U v. Defrancesco*,

 No. 08 C 4060, 2009 WL 1108490 (N.D. Ill. Apr. 21, 2009)

*Greenberger v. GEICO Gen'l Ins. Co.*, 631 F.3d 392(7th  Cir. 2011)

*Bucciarelli-Tiger v. Victory Records, Inc.*, 488 F. Supp. 2d 702 (N.D. Ill. 2007)

*Modern Track Mach., Inc. v. Bry-Lon, Ltd.,* 197 Ill. App. 3d 560, (2d Dist. 1990)

*Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751 (1999)

*Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011 (N.D. Ill. 2009)

*DeGeer v. Gillis*, 707 F. Supp. 2d 784 (N.D. Ill. 2010)

*Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772 (N.D. Ill. 2006)

*People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473 (1992)

*Homestead Ins. Co. v. Chicago Transit Auth.*, 96 C 4570, 1997 WL 43232 (N.D. Ill. Jan. 23, 1997)

*Amadou v. J.B. Hunt Transp.*, 2008 WL 4323735, (D. Minn. Sept. 17, 2008)

*Pena v. Ingham Cnty. Rd. Comm'n*, 255 Mich. App. 299, 312 (2003)

*Slanaker v. AccessPoint Employment Alternatives, LLC*, 2008 WL 408519 (E.D. Mich. Feb. 13, 2008)

Fed. R. Civ. P. 9(b)

# TABLE OF AUTHORITIES

**Statutes**

Fed. R. Civ. P. 12(b)(6)………………………………………………………1, 9

Fed. R. Civ. P. 9(b) …………………………………………………….…... 15

**Cases**

*Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007) ……………………………. 1

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)…………………………………………. 1

*Anders v. Verizon Communications Inc.*, 16-CV-5654 (VSB),

2018 WL 2727883 (S.D.N.Y. June 5,2018)……………………… 5, 9, 11 and 12

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 10-CV-1341

JFB ETB, 2012 WL 748760, (E.D.N.Y. Mar. 7, 2012) .…………..…………..… 6

*Provision Group, Inc. v. Crown Toxicology, Ltd.,* , 2017 WL 11221433

(W.D. Tex. Oct. 19, 2017) …………………………………………….……..6

*Lawley v. Siemens*, 11-12822, 2011 WL 6000797

(E.D. Mich. Nov. 30, 2011) ………………………………………….6, 10 and12

*Kunica v. St. Jean Fin., Inc.*, 97 CIV. 3804 (RWS), 1998 WL 437153 (S.D.N.Y.

Aug. 3, 1998)………………………………………………….…………8

*Maraulo v. CitiMortgage, Inc*., 12-CV-10250, 2013 WL 530944

(E.D. Mich. Feb. 11, 2013) …………………………………………….…. 8

*Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*,

CIV. 13-00669 HG-BMK, 2014 WL 2761744 (D. Haw. June 18, 2014) ……….. 11

*Ault v. C.C. Servs., Inc.*, 232 Ill. App. 3d 269 (3d Dist. 1992)……………..….. 13

*Bd. of Educ. of Crete-Monee Cmty. Unit Sch. Dist. No. 201-U v. Defrancesco*,

 No. 08 C 4060, 2009 WL 1108490 (N.D. Ill. Apr. 21, 2009)…………………13, 14

*Greenberger v. GEICO Gen'l Ins. Co.*, 631 F.3d 392(7th  Cir. 2011)………….... 14

*Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702

(N.D. Ill. 2007)…………………………………………….……………..… 14

*Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill. 2d 100 (2005)……………… 15

*Modern Track Mach., Inc. v. Bry-Lon, Ltd.,* 197 Ill. App. 3d 560

(2d Dist. 1990)…………………………………………………………….... 15

*Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751 (1999)…………..……….. 15

*Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011 (N.D. Ill. 2009)……………..……….. 16

*DeGeer v. Gillis*, 707 F. Supp. 2d 784 (N.D. Ill. 2010)…….…………………..… 16

*Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772

(N.D. Ill. 2006). ………………………………………………………….…… 17

*People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473 (1992)…………... 17

*Homestead Ins. Co. v. Chicago Transit Auth.*, 96 C 4570, 1997 WL 43232

 (N.D. Ill. Jan. 23, 1997)…………………………………………………….. 17

*Amadou v. J.B. Hunt Transp.*, 2008 WL 4323735

(D. Minn. Sept. 17, 2008) …………………………..………………….......... 19

*Pena v. Ingham Cnty. Rd. Comm'n*, 255 Mich. App. 299, 312 (2003)…………... 19

*Slanaker v. AccessPoint Employment Alternatives, LLC*, 2008 WL 408519

(E.D. Mich. Feb. 13, 2008)………………………………………………………… 19

Defendant All American Recycling, Inc. ("All American") and Defendant Michael Zambon ("Zambon") (collectively, "Defendants"), by ad through their counsel, Brotschul Potts, LLC and Szura & Delonis, PLC, pursuant to Fed. R. Civ. P. 12(b)(6), hereby ask that the Court, in accordance with their *Defendants' Motion To Dismiss Plaintiffs' Second Amended Complaint,* to dismiss all claims brought against them in the *Second Amended Complaint And Jury Demand* (the "Complaint") filed by Plaintiff Reanna Peyton ("Peyton") and Plaintiff R. Peyton Consulting LLC ("Peyton Consulting") (collectively, "Plaintiffs").  In support of this motion (the "Motion"), Defendants state:

## ARGUMENT

### Rule 12(b)(6) Requires Plaintiffs To Plead Sufficient Facts

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint is subject to dismissal when it fails "to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must have "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint that offers "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or " 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 555, 557).  Factual allegations must be enough to raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at

1

544, 555.  In the instant case, as explained *infra*, Plaintiffs rely on vague, ambiguous, and conclusory assertions.

## I.   **Count I:  Plaintiffs Have Failed To Plead A Breach Of An Oral Contract**

Although Plaintiffs allege the parties "agreed" to a great many things, Plaintiffs' Count I appears to be premised on a breach of a single, oral contract. (Second Am. Compl. ¶¶ 68 ("the oral agreement"), 77 ("the oral agreement"), 88 ("the oral agreement").)  Nevertheless, Plaintiffs' entire Complaint fails to specify: (a) the particular date upon which the oral contract which was allegedly breached was formed; or (b) the terms of the oral contract that was breached. In the Complaint, Plaintiffs obfuscate by alleging, time after time, that the parties "agreed" to various things while never specifying which agreement constitutes "the oral agreement" upon which they are suing Defendants.  (*See* Second Am. Compl. ¶¶ 11, 12, 14, 17, 25, 29, 31, 33, 34, 41, 49, 57, 58, 59, 67, 75, 83.)

Although the words "agreed" and "agreement" appear 25 times in Plaintiffs' Count I, Plaintiffs never use a defined term – such as "Agreement" or "Contract" – to identify the particular agreement, of the many they claim were formed, which was supposedly breached.  In Plaintiffs' Complaint, Plaintiffs appear to be asserting that twelve or more oral agreements were formed amongst the parties over the four-year period between April 2019 (Second Am. Compl. ¶ 10) and May 2023 (Second Am. Compl. ¶¶ 58-59):

2

(1)  "Ms. Peyton *agreed* to become equal partners with Mr. Zambon (who was acting as an individual and in his capacity as President of All American) in a new brokerage company, All American Resource Management ('AARM')[.]" (Second Am. Compl. ¶ 11 (emphasis added).)

(2)  The parties "further *agreed* that Ms. Peyton was entitled to a sales commission of 50% of brokerage fees from All American, whether or not AARM was operational." (Second Am. Compl. ¶ 12 (emphasis added).)

(3)  "Since AARM was not yet up and running, Ms. Peyton and Mr. Zambon . . . *agreed* shortly after that her compensation (including sales commissions) would be paid by All American until they obtained financial support to build AARM. *Unless otherwise noted, these agreements were made during the constant and routine communications between Mr. Zambon and Ms. Peyton during the time periods noted*." (Second Am. Compl. ¶ 14 (emphasis added).)

(4)  "Ms. Peyton always lived in Michigan while working for All American, and she and Mr. Zambon *agreed* that she would continue to work from Michigan with occasional visits to Chicago as needed." (Second Am. Compl. ¶ 17 (emphasis added).)

(5)  "Ms. Peyton *agreed* to become acting interim CFO of All American in reliance on the acceptance by Mr. Zambon . . . of her conditions: that she was entitled to a separate salary and benefits for such work, she could continue to work remotely and was not required to be regularly present in Chicago and she was primarily charged with continuing her efforts to get the parties' AARM partnership off the ground. Mr. Zambon agree to Ms. Peyton's conditions and the parties entered into this third oral agreement." (Second Am. Compl. ¶ 25 (emphasis added).)

(6)  "Based in part on Ms. Peyton's substantially increased workload, in March 2020, Mr. Zambon and Ms. Peyton *agreed* that the sales they intended to process through AARM would process through

3

All American, as AARM was still not fully set up." (Second Am. Compl. ¶ 29 (emphasis added).)

(7)   "Mr. Zambon . . . and Ms. Peyton further *agreed* that Ms. Peyton would be paid an increased salary from All American, reflecting her expanded responsibilities once the company had navigated the COVID period."  (Second Am. Compl. ¶ 31 (emphasis added).)

(8)   "In June and July 2020, Mr. Zambon asked Ms. Peyton to take on the financial and human resources management of two more of his network of companies, Elite Metals and Sani-Spire.  Ms. Peyton *agreed* to do so in reliance on Mr. Zambon's repeated assurance (in person and via telephone) that she would finally be paid the commissions[.]" (Second Am. Compl. ¶ 33 (emphasis added).)

(9)   "In September 2020, Mr. Zambon *agreed* that Ms. Peyton should be added to the All American payroll so that she could receive health insurance because AARM was still not fully set up." (Second Am. Compl. ¶ 34 (emphasis added).)

(10)  "Ms. Peyton proposed opening a Michigan office with its own team and hiring a Chief Financial Officer for All American.  Mr. Zambon *agreed* and advised her to locate suitable office space." (Second Am. Compl. ¶ 41 (emphasis added).)

(11)  "Mr. Zambon proposed to start paying Ms. Peyton's commissions by paying her, through Peyton Consulting, 50% of the brokered sales net profitability plus 20%, for a total of 70% of the net profit.  The additional 20% was *agreed* upon to compensate for the pay down of the prior brokered sales. Payments were to be made each time any customer of Ms. Peyton's paid All American for materials received.  Mr. Zambon and Ms. Peyton *agreed* that these partial payments would begin as of January 1, 2023."  (Second Am. Compl. ¶ 49 (emphasis added).)

4

(12)   "On May 2, 2023, Ms. Peyton traveled to Joliet, Illinois and met with Mr. Zambon.  She provided him with a spreadsheet she had created detailing what she was owed.  Mr. Zambon *agreed* that they would reach a settlement regarding those amount[.]" (Second Am. Compl. ¶ 58 (emphasis added).)

(13)   "Ms. Peyton *agreed* in reliance on Mr. Zambon's acceptance of the conditions that she retain access to the Chicago condominium and use of her vehicle leased by All American until the lease was concluded, and that her son would also be kept on the All American payroll.  Mr. Zambon *agreed* to all of the conditions." (Second Am. Compl. ¶ 59 (emphasis added).)

(14)   In the portion of Plaintiffs' Amended Complaint devoted to the elements of their breach of contract claim, Plaintiffs state, at an unspecified time, "All American, through its President Mr. Zambon, *agreed* to pay Ms. Peyton sales commissions, either directly to Ms. Peyton or to her company Peyton Consulting, based on sales of all brokered material." (Second Am. Compl. ¶ 67 (emphasis added).)

Absent from these allegations is: (a) the identification of the particular oral contract upon which Plaintiffs are suing; (b) a description of the specific terms of the alleged oral contract that was breached; (c) the date when the oral contract that was allegedly breached was formed; (d) the location where the oral contract was formed; and (e) how Plaintiff R. Peyton Consulting LLC, as opposed to Plaintiff Reanna Peyton, entered into the particular oral contract.  Plaintiffs' Count I fails because its vague and ambiguous allegations do not place Defendants on notice of the particular contract that was supposedly breached.

Plaintiffs have impermissibly failed to identify the particular contract which they maintain Defendant All American breached.  *Anders v. Verizon*

*Communications Inc.*, 16-CV-5654 (VSB), 2018 WL 2727883, at *9 (S.D.N.Y. June 5, 2018) (granting Rule 12(b)(6) motion to dismiss breach of oral contract claim where Plaintiff failed to set forth the terms of the alleged contract with definiteness); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 10-CV-1341 JFB ETB, 2012 WL 748760, at *8 (E.D.N.Y. Mar. 7, 2012) (granting Rule 12(b)(6) motion to dismiss where plaintiffs failed to plead a breach of contract because they did not "allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated"); *Provision Group, Inc. v. Crown Toxicology, Ltd.*, , 2017 WL 11221433, at *4 (W.D. Tex. Oct. 19, 2017) (granting Rule 12(b)(6) motion to dismiss breach of oral contract claim where plaintiff failed to allege the elements of their claim).

For Plaintiffs to state a breach of contract, they must plead: (1) that the parties were competent to contract, (2) proper subject matter, (3) legal consideration, (4) mutuality of agreement (offer and acceptance), and (5) mutuality of obligation. *Lawley v. Siemons*, 11-12822, 2011 WL 6000797, at *8 (E.D. Mich. Nov. 30, 2011) (granting Rule 12(b)(6) motion to dismiss breach of oral contract claim). Here, Plaintiffs fail to allege that: (a) each of the *three* parties are competent to contract; (b) legal consideration as to each of the *three* parties; (c) mutuality of agreement as to all *three* parties; and (d) mutuality of obligation as to all *three* parties. In Count

I, Plaintiffs never plead facts indicating any agreements were formed with the second plaintiff, Plaintiff Peyton Consulting LLC.  (*See* Second Am. Compl. ¶¶ 11, 12, 17, 25, 29, 31, 33, 34, 41, 49, 57, 58, 59, 67, 68 (failing to allege a contract was formed between *Plaintiff Peyton Consulting, LLC* and Defendants).)  It is impossible to know – with respect to the many times Plaintiffs claim a subset of the three parties allegedly "agreed" to something – which event constitutes the particular oral contract Plaintiffs are claiming was breached.  Accordingly, Plaintiffs have failed to state a claim with respect to either of the Plaintiffs and their Count I should be dismissed.

In the portion of Plaintiffs' Complaint reserved for Count I, Plaintiffs make the vague claim that Defendant All American "agreed to pay Ms. Peyton sales commissions, either directly to Ms. Peyton or to her company Peyton Consulting, based on sales of all brokered material."  (Second Am. Compl. ¶ 67.)  Perhaps Plaintiffs will claim that this paragraph identifies the oral contract they are seeking to enforce.  If this happens, Plaintiffs Count I should still be deemed insufficient.  In paragraph 69, Plaintiffs allege, "In September 2022, Mr. Zambon and Ms. Peyton met and Mr. Zambon presented a plan to start to pay her for sales commissions *owed to her*." (Second Am. Compl. ¶¶ 69 (emphasis added).)  Thus, Plaintiffs are arguing Defendant Zambon agreed to pay commissions that were *already owed* pursuant to an *earlier agreement*.  However, Plaintiffs do not specify the terms of the earlier

alleged agreement or what consideration was given for the supposed new agreement. (*See* Second Am. Compl. ¶¶ 67-72.) In sum, Plaintiffs fail to include, anywhere in their Complaint, a clear description of the terms of the particular oral contract that was breached. *Kunica v. St. Jean Fin., Inc.*, 97 CIV. 3804 (RWS), 1998 WL 437153, at *5 (S.D.N.Y. Aug. 3, 1998) (granting Rule 12(b)(6) motion to dismiss oral contract claim because the alleged terms were indefinite); *Maraulo v. CitiMortgage, Inc.*, 12-CV-10250, 2013 WL 530944, at *11 (E.D. Mich. Feb. 11, 2013) (granting Rule 12(b)(6) motion to dismiss breach of contract claim because plaintiffs did not explain which contract or agreement they were referring to and did not present facts regarding the other elements of a breach of contract claim). Plaintiffs' allegations are vague, confusing, and – at best – conclusory. Therefore, Plaintiffs' Count I should be dismissed.

## II. Count II: Plaintiffs Have Failed To Plead A Breach Of An Oral Agreement That Violates The Michigan Sales Representative Commissions Act

In Count II of the Complaint, Plaintiffs fail to properly allege the breach of an oral contract that would otherwise provide a foundation of their Michigan Sales Representative Commission Act ("MSRCA") claim. The Complaint does not apprise Defendants of: (a) what the *terms* of the oral contract at issue were; (b) *when* the oral contract was formed; or (c) *where* the contract was formed. In Count II, Plaintiffs make the vague statement that, "All American, through its President Mr.

Zambon, agreed to pay [Plaintiff] Ms. Peyton 'commissions,' either directly to her or through her company, [Plaintiff] Peyton Consulting, as defined in MSRCA, MCL §§ 600.2961(1)(a)." (Second Am. Compl. ¶ 75.) To give Defendants notice of their claim, Plaintiffs must identify the *terms* of the oral agreement that provides the basis for Plaintiffs' MSRCA claim. Yet Plaintiffs never even identify the particular oral agreement, of the many agreements they reference in their "General Allegations," that provides the basis for their MSRCA claim. (*See* Second Am. Compl. ¶¶ 11, 12, 14, 17, 25, 29, 31, 33, 34, 41, 49, 57, 58, and 59.) Thus, in violation of Fed. R. Civ. P. 12(b)(6), Plaintiffs have not adequately identified the oral contract that provides the basis for the MSRCA claim with sufficient "definiteness." *Anders v. Verizon Communications Inc.*, 16-CV-5654 (VSB), 2018 WL 2727883, at *9 (S.D.N.Y. June 5, 2018) (granting Rule 12(b)(6) motion to dismiss breach of oral contract claim where Plaintiff failed to set forth the terms of the alleged contract with definiteness). Thus, Count II must be dismissed in its entirety.

There is another fatal deficiency with Plaintiffs' Count II. Like Plaintiffs' Count I, Plaintiffs' Count II fails to allege the existence of a contract, at all, between a defendant and one of the two plaintiffs, Plaintiff Peyton Consulting LLC. The allegations specific to Count II, which attempt to set forth the requisite elements of Plaintiffs' cause of action, repeatedly refer to Plaintiff Peyton. They never allege that an agreement was formed between a defendant and Plaintiff Peyton Consulting

LLC.  (*See* Second Am. Compl. ¶¶ 74-78.)  Yet, in the final paragraph of Count II, it is alleged that, "*Plaintiffs* have been damaged[.]" (Second Am. Compl. ¶ 80 (emphasis added).)   Consistent therewith, Plaintiffs' prayer for relief seeks a "judgment that Defendant, All American, is liable to *Plaintiffs* for violating the [MSRCA]."  (Second Am. Compl. p. 32, ¶ B (emphasis added).)   Given that Plaintiffs have failed to set forth any basis for a defendant to be liable to Plaintiff R. Peyton Consulting LLC under the MSRCA, Plaintiffs' Count II should be dismissed as to Plaintiff R. Peyton Consulting LLC.

### III.   Count III:  Plaintiffs Have Failed To Plead A Breach Of An Oral Contract To Pay Wages And Benefits

Plaintiffs Count III fails for essentially the same reason as Counts I and II.  In Count III, Plaintiff Peyton refers to two agreements: (a) "an oral agreement that Ms. Peyton would be paid wages and benefits" (Second Am. Compl. ¶ 82); and (b) another contract pursuant to which "[t]he parties subsequently agreed that Ms. Peyton would be paid additional wages and benefits" (Second Am. Compl. ¶ 83). For both of these alleged agreements, Plaintiffs neglect to plead: (1) the parties are competent to contract, (2) proper subject matter, (3) legal consideration, (4) mutuality of agreement (offer and acceptance), and (5) mutuality of obligation. *Lawley v. Siemons*, 11-12822, 2011 WL 6000797, at *8 (E.D. Mich. Nov. 30, 2011) (granting Rule 12(b)(6) motion to dismiss breach of oral contract claim).  Also, the alleged oral agreements are never identified in terms of: (a) a description of the

10

specific terms of the alleged oral contracts; (b) an exact or approximate date(s) when the alleged oral contracts were formed; or (c) the location(s) where the oral contracts were formed.  Plaintiffs have not pled the contract with proper definiteness. *Anders v. Verizon Communications Inc.*, 16-CV-5654 (VSB), 2018 WL 2727883, at *9 (S.D.N.Y. June 5, 2018) (granting Rule 12(b)(6) motion to dismiss and stating, "These various characterizations do not set forth the terms of the alleged [oral] contract with definiteness").  Count III should be dismissed.

## IV.   Count IV:  Plaintiffs Have Failed To Plead A Breach Of An Oral Contract To Transfer Equity Ownership

Count IV should be dismissed for three reasons.  Plaintiff Peyton claims she and the Defendants entered into an "oral agreement that Ms. Peyton would receive 50% equity ownership in AARM, which was to serve as the brokerage arm of [Defendant] All American."  (Second Am. Compl. ¶ 87 (emphasis added).)  Plaintiff Peyton fails to identify the terms of the supposed oral agreement.  For example, she does not state:  (a) when the interest(s) would be conveyed; (b) the length of time Ms. Peyton would be required to work to be entitled to the interest(s); (c) the amount of sales Ms. Peyton would be required to make to be entitled to the interest(s); and (d) a host of other potential terms.  *First*, Count IV should be dismissed because a promise of an undefined "equity interest" in "one or more" companies, at an unspecified time, in exchange for unspecified consideration, is too vague to be enforceable. *Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*, CIV.

11

13-00669 HG-BMK, 2014 WL 2761744, at *12 (D. Haw. June 18, 2014) (granting Rule 12(b)(6) motion to dismiss oral contract claim and stating, "The terms of the contract must be stated with sufficient definiteness to be enforceable."); *see also Anders v. Verizon Comm. Inc.*, 2018 WL 2727883, at *9 (S.D.N.Y. June 5, 2018) (granting Rule 12(b)(6) motion to dismiss and stating, "These various characterizations do not set forth the terms of the alleged [oral] contract with definiteness").  *Second*, as explained with respect to Counts I through III *supra*, Plaintiffs have not pled the elements of a breach of contract action.  *Lawley v. Siemons*, 11-12822, 2011 WL 6000797, at *8 (E.D. Mich. Nov. 30, 2011).  *Third*, Plaintiff Peyton has failed to identify how *each* of the two Defendants engaged in conduct that would make *each* of them liable to each of the two Plaintiffs.  (Second Am. Compl. ¶ 90 (alleging damages as a result "*Defendants'* breach of contract") (emphasis added).)  Therefore, like Counts I through III, Count IV should be dismissed.

## V.    Counts V and VI:  Plaintiffs' Fraud Claims Fail Because They Are Not Based On A False Statement Of Fact

Plaintiffs' fraud claims, in Counts V and VI, should be dismissed for three independent reasons.  *First*, Counts V and VI should be dismissed because Plaintiffs do not base their purported fraud claims upon their reliance on an alleged misrepresentation concerning a *present or pre-existing fact*.  To state a viable fraud claim, the "alleged misrepresentations must be statements of present or preexisting

facts, and *not statements of future intent or conduct*." *Ault v. C.C. Servs., Inc.*, 232 Ill. App. 3d 269, 271 (3d Dist. 1992) (emphasis added); *accord Bd. of Educ. of Crete-Monee Cmty. Unit Sch. Dist. No. 201-U v. Defrancesco*, No. 08 C 4060, 2009 WL 1108490, at *3 (N.D. Ill. Apr. 21, 2009) (promissory fraud not actionable).   A comparison of Plaintiffs' *Amended* Complaint and *Second* Amended Complaint demonstrates that Plaintiffs are relying on statements of future intent rather than fact. For example, in paragraph 92 of Plaintiffs' *Amended* Complaint, Plaintiffs alleged that a defendant said, "Ms. Peyton and/or Peyton Consulting *would be paid* all sales commissions."   (Am. Compl. ¶ 92 (emphasis added).)   In Plaintiffs' *Second* Amended Complaint, Plaintiffs changed this language to claim a Defendant said, "Ms. Peyton and/or Peyton Consulting *was/were entitled* to sales commission on the business she brokered." (Second Am. Compl. ¶ 92 (emphasis added).)  In the Second Amended Complaint, Plaintiffs fail to indicate how they "reasonably relied" on this alleged statement in such way as to cause them to be the victims of fraud.  (*See* Second Am. Compl. 96.)   Likewise, in paragraph 93 of Plaintiffs' *Amended* Complaint, Plaintiffs alleged that a defendant said, "Ms. Peyton *would be paid* additional wages/benefits for work performed." (Am. Compl. ¶ 93.)  In Plaintiff's *Second* Amended Complaint, Plaintiffs changed this language to state a Defendant said, "Peyton was entitled to additional wages and benefits." (Second Am. Compl. ¶ 93.)  Again, Plaintiffs fail to indicate how they "reasonably relied" on the alleged

statement in such way as to cause them to be the victims of fraud.  (*See* Second Am. Compl. 96.)  Lastly, in paragraph 99 of Plaintiffs' *Amended* Complaint, Plaintiffs allege that a defendant said, "Ms. Peyton *would receive* 50% equity in AARM[.]" (Am. Compl. ¶ 99 (emphasis added).)  In Plaintiffs' *Second* Amended Complaint, Plaintiffs changed this language to claim a Defendant said, "he and Ms. Peyton *were* equal partners in ARM." (Second Am. Compl. ¶ 99 (emphasis added).)  Once again, in the Second Amended Complaint, Plaintiffs fail to indicate how they "reasonably relied" on the alleged statement in such way as to cause them to be the victims of fraud.  (*See* Second Am. Compl. 102.)  Plaintiffs' efforts to backfill demonstrate that they are not basing their fraud claims upon their reasonable reliance on a false allegation regarding a "present or pre-existing fact."  Hence, Counts V and VI should be dismissed.  *See Ault*, 232 Ill. App. 3d at 271.

*Second*, Plaintiffs rely upon all of their breach of contract allegations to support their alleged fraud claims. (*See* Second Am. Compl. ¶¶ 91, 98 (realleging the same allegations relied upon in Plaintiffs' four breach of contract counts).)  In other words, the fraud Plaintiffs allege is that the Defendants' failed to perform under the parties' contract(s).  But the law requires more than simply a failure to act as promised under a contract to prove fraud.  *See Greenberger v. GEICO Gen'l Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011); *accord Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 711 (N.D. Ill. 2007) ("A breach of contract is

14

not sufficient to find fraud.") (citing *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999)); *see generally Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill. 2d 100, 169-170 (2005).  Given that Plaintiffs do not plead any facts outside of the oral contract's conditions, Plaintiffs do not have a proper fraud claim under applicable law.

*Third*, Plaintiffs' purported fraud claims should be dismissed because Plaintiffs do not plead facts (let alone facts as Fed. R. Civ. P. 9(b) requires) showing that they reasonably relied upon any of the statements at issue.  According to Plaintiff Peyton, time after time between April 2019 (Second Am. Compl. ¶¶ 10-11) and May 2023 (Second Am. Compl. ¶¶ 58), Defendant Zambon agreed to do various things but never followed through.  Because Plaintiffs states that Plaintiff Peyton continued working with Defendants, despite an alleged lack of performance by Defendants, Plaintiffs cannot be said to have acted in reasonable reliance upon the ongoing agreements.  *See Modern Track Mach., Inc. v. Bry-Lon, Ltd.,* 197 Ill. App. 3d 560, 564-65 (2d Dist. 1990) ("A party cannot close its eyes to obvious facts and then charge that it has been deceived."); *accord Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751, 763-64 (1999).  For this additional reason, Plaintiffs do not plead viable fraud claims in Counts  V and VI.

**VI.    Counts VII, VIII, and IX:  Because Plaintiffs Assert a Contract Exists, They Have No Viable Promissory Estoppel Or Unjust Enrichment Claims**

Plaintiffs' Counts VII and VIII, which purport to assert promissory estoppel claims, cannot stand given Plaintiffs' repeated assertions that an express, oral contract exists between the parties.  In Plaintiffs' "General Allegations," which are made part of Plaintiffs' promissory estoppel counts (Second Am. Compl. ¶¶ 104, 110), Plaintiffs assert that an "agreement," "agreements," and "contract" exist between the parties (Second Am. Compl. ¶¶ 14, 30, 60, 63).  Further, Plaintiffs incorporate additional allegations of the existence of an express "oral agreement" and "breach of contract" from their first four counts (Second Am. Compl. ¶¶ 68, 72, 76, 77, 82, 85, 87, 88, 90) into their promissory estoppel counts (Second Am. Compl. ¶¶ 104, 110).  Moreover, the subject matters of the alleged contract and Plaintiffs' promissory estoppel counts overlap.  (*Compare* Second Am. Compl. ¶¶ 68, 75, 82 vs 105; Second Am. Compl. ¶¶ 87 vs 111.)  "Where a valid contract exists, a plaintiff cannot use theories like unjust enrichment and promissory estoppel to shift the risk that plaintiff knowingly assumed." *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (dismissing promissory estoppel and unjust enrichment claims with prejudice based on allegations of the existence of a contract); *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 797 (N.D. Ill. 2010) (dismissing promissory estoppel and unjust enrichment claims with prejudice based on allegations of the existence of a

contract).[1]  Plaintiffs' promissory estoppel claims must be dismissed, as a matter of law, because Plaintiffs have asserted the parties have a contract.

Likewise, Plaintiffs Count IX, purporting to assert an unjust enrichment claim, cannot stand in the face of Plaintiffs' repeated assertions that an express oral contract exists.  *See Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006).   In Plaintiffs' "General Allegations," which are made part of Plaintiffs' unjust enrichment count (Second Am. Compl. ¶ 116), Plaintiffs assert that an "agreement," "agreements," and "contract" exist between the parties (Second Am. Compl. ¶¶ 14, 30, 60, 63).   Further, Plaintiffs incorporate additional allegations of the existence of an express "oral agreement" and "breach of contract" from their first four counts (Second Am. Compl. ¶¶ 68, 72, 76, 77, 82, 85, 87, 88, 90) into their unjust enrichment count (Second Am. Compl. ¶ 116).  Moreover, the subject matters of the alleged contract and Plaintiffs' unjust enrichment count overlap.  (*Compare* Second Am. Compl. ¶¶ 68, 75, 82, 87 vs 118.)  "Where the plaintiff asserts that the parties have an express contract governing their relationship, 'the doctrine of unjust enrichment has no application' and the count for unjust enrichment must be dismissed.'"  *Cole-Haddon, Ltd.,* 454 F. Supp. 2d at 777 (quoting *People ex rel.*

---

[1] As to Counts VII and VIII, Plaintiffs fail to plead any facts, whatsoever, supporting a claim of reliance upon Defendants' purported promises.   This deficiency also mandates dismissal.  In the interest of brevity, Defendants have not expounded on this basis for dismissal.

*Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992)); *Homestead Ins. Co. v. Chicago Transit Auth.*, 96 C 4570, 1997 WL 43232, at *4 (N.D. Ill. Jan. 23, 1997) (dismissing unjust enrichment claim based on allegations of the existence of a contract).  Accordingly, Count IX must be dismissed.

## VII.  Counts X and XI:  Plaintiff Peyton Has Failed To Plead She Suffered A Recognized Adverse Employment Action

Plaintiff Peyton's ELCRA and Title VII claims are premised on her allegedly having been subjected to "adverse employment action" due to her sex.  (Second Am. Compl. ¶¶ 135, 139, 146.)  Plaintiff Peyton lists six purported "adverse employment actions" upon which her Counts X and XI are based.  None of the conduct identified by Plaintiff Peyton constitutes an adverse action taken by her employer.

An "adverse employment action" requires an *employer* to make a change that is adverse to the interests of the employee.  In the case at bar, Plaintiff Peyton admits that, rather than being an employee, she was "equal partners" with Defendant Zambon.  (Second Am. Compl. ¶ 11.)  She was an "independent contractor" while working with Defendants.  (Second Am. Compl. ¶ 13.)  Consistent with Plaintiff Peyton being a partner, rather than an employee, she states she negotiated and formed agreements with Defendant Zambon many times.  (*See* Second Am. Compl. ¶¶ 11-41, 48-53, 57-62.)  According to Plaintiff Peyton, Defendant Zambon stated to her, with regard to the AARM business, "it's ours." (Second Am. Compl. ¶ 44.)  She had a "business relationship" with Defendant Zambon.  (Second Am. Compl. ¶

18

64.)  Plaintiff Peyton even had her own lawyer represent her in her ongoing disputes with Zambon.  (Second Am. Compl. ¶ 61.)  Thus, according to Plaintiff Peyton, she was a business partner of Defendant Zambon rather than an *employee* of the Defendants.  As such, there is no basis for her ELCRA or Title VII claims.  *Amadou v. J.B. Hunt Transp.*, 2008 WL 4323735, at *3 (D. Minn. Sept. 17, 2008) (dismissing Title VII claim brought by a non-employee).

Even if Plaintiff Peyton had been an employee, her ELCRA and Title VII claims would need to be based on an "adverse employment action."  "Adverse employment actions" typically take "the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Pena v. Ingham Cnty. Rd. Comm'n*, 255 Mich. App. 299, 312 (2003) (internal quotation omitted).  The list of six "adverse employment actions" upon which Plaintiff Peyton relies for her ELCRA and Title VII counts does not include any of those items.  (Second Am. Compl. ¶¶ 135, 139, 146.)  They do not indicate that an "adverse employment action" occurred "under circumstances giving rise to an inference of unlawful discrimination."  *Slanaker v. AccessPoint Employment Alternatives, LLC*, 2008 WL 408519, at *6 (E.D. Mich. Feb. 13, 2008).

The first of Plaintiff Peyton's six allegations is

19

> A.   As discussed above, Ms. Peyton was exposed to sexually hostile working conditions.

(Second Am. Compl. ¶ 135(A).)   Even though the existence of a hostile work environment might provide a basis for a different type of claim by a plaintiff, such an environment does not constitute an "adverse employment action" taken by the employer.  Stated another way, such hostile conditions, in and of themselves, do not affect the *employment status* of a plaintiff.

The second of Plaintiff Peyton's six allegations fares no better.  It is:

> B.   Ms. Peyton did not receive promised sales commissions, notwithstanding her substantial contribution to the revenue of [Defendant] All American, including but not limited to her success in procuring new customers.

(Second Am. Compl. ¶¶135(B).)  Plaintiff's own complaint indicates Plaintiff Peyton began working with Defendants in "mid-2019" (Second Am. Compl. ¶ 13) and that she was behind on her commissions no later than March 2020 (Second Am. Compl. ¶¶ 29-30.)   Given that Plaintiff Peyton worked with Plaintiff for four years, her not receiving her full commissions within nine months of commencing work as an "independent contractor" could not be a change that could constitute an "adverse employment action."

The third of Plaintiff Peyton's six allegations is:

> C.   Ms. Peyton received lower compensation in her role as CFO of [Defendant] All American and [Defendant] Zambon's other

entities and for carrying out human resources responsibilities for those entities.

(Second Am. Compl. ¶ 135(C).)   Again, Peyton fails to identify a *change* in circumstance, as required to set forth an "adverse employment action" claim, while she was working with Defendants.

The fourth of Plaintiff Peyton's six allegations fare no better.  Plaintiff Peyton states:

D.   Ms. Peyton did not receive promised equity ownership in any of [Defendant] Zambon's entities despite such ownership being provided to other, less successful and less qualified men.

(Second Am. Compl. ¶ 135(D).)  *First*, this statement is wholly conclusory.  Plaintiff fails to identify even one man, by job title or otherwise, who was promised equity ownership and then received it.  *Second*, once again, Plaintiff Peyton fails to identify a *change* in circumstance, while she was working with Defendants, that would constitute an "adverse employment action."

The fifth of Plaintiff Peyton's six allegations states:

E.   Ms. Peyton was replaced as CFO of [Defendant] All American by a man who was less qualified and performed fewer duties than Ms. Peyton, but who earned substantially the same compensation for providing services only to [Defendant] All American, while Ms. Peyton was required to work more hours and provide more services to other companies owned by [Defendant] Mr. Zambon.

(Second Am. Compl. ¶ 135(E).)   Under normal circumstances, Plaintiff Peyton's being replaced might constitute an "adverse employment action."   Here, it does not

21

because Plaintiff Peyton has admitted both that:  (a) she agreed, when given the position, that she would only be an "acting interim CFO" (Second Am. Compl. ¶ 25); and (b) the new CFO was paid less than Plaintiff Peyton (Second Am. Compl. ¶55 (indicating her replacement was paid "close to [her] salary")).

The sixth of Plaintiff Peyton's six allegations is:.

> F.   Ms. Peyton was routinely excluded from company meetings, events, other functions, and group texts that were open to male management only.  She was included in only a single event during her entire business relationship with [Defendant] All American and [Defendant] Zambon's other entities.

(Second Am. Compl. ¶ 135(F).)  Plaintiff Peyton does not identify any *change* in how she was treated.  That is, attending the events or receiving group texts was not a part of her job which was later taken away from her.  Thus, there was no "adverse employment action."  In sum, Counts X and XI should be dismissed because Plaintiff Peyton has failed to allege facts indicating: (a) she was an employee of both Defendants; and/or (b) she suffered an "adverse employment action."

## CONCLUSION

Wherefore, Defendant All American Recycling, Inc. and Defendant Michael Zambon respectfully request that this Court: (a) grant *Defendants' Motion To Dismiss Plaintiffs' Second Amended Complaint*; (b) dismiss all claims brought against Defendants in Plaintiffs' *Second Amended Complaint And Jury Demand*; and (c) grant Defendants such other and further relief as the Court deems just.

Dated:  July 30, 2024

Respectfully submitted,

All American Recycling, Inc.
And Michael Zambon

By: _s/ Louis C. Szura_____
        One of Defendants' Attorneys

Richard L. Miller II
_rmiller@brotschulpotts.com_
Brotschul Potts LLC
1 Tower Lane, Suite 2060
Oakbrook Terrace, Illinois 60181
Phone:  312.551.9003
Fax:  312.277.3278
Illinois ARDC No. 6243507

Louis C. Szura (P71764)
_lszura@szuradelonis.com_
Szura & Delonis, PLC
29777 Telegraph Road, Suite 2475
Southfield, Michigan 48034
P:  248-716-3600
_Local Counsel_

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Defendants' Brief In Support Of Motion To Dismiss Plaintiffs' Second Amended Complaint** was filed this 30th day of July 2024 via the electronic filing system of the Eastern District of Michigan, which will automatically serve all counsel of record.

*/s/ Louis C. Szura*

24