# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Reanna Peyton and
R. Peyton Consulting LLC,

     *Plaintiffs,*                                      Case No. 23-cv-11885

v.                                                    Hon. Brandy R. McMillion

All American Recycling, Inc.                Hon. Kimberly G. Altman
and Michael Zambon,

     *Defendants*.

## PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' <u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................ v

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED ....................... 2

Standard of Review .................................................................................................... 2

I.   PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF CONTRACT
     TO PAY SALES COMMISSIONS ................................................................... 3

II.  PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF
     MICHIGAN SALES REPRESENTATIVE COMMISSION ACT ............... 8

III. PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF
     CONTRACT TO PAY WAGES AND BENEFITS ....................................... 9

IV.  PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF
     CONTRACT FOR EQUITY OWNERSHIP ............................................... 10

V.   PLAINTIFFS HAVE STATED A CLAIM FOR FRAUD .......................... 12

     A. Plaintiffs Have Pled Fraud Related to Existing Facts ........................ 12

     B. Plaintiffs Have Pled Fraud Outside of Contractual Conditions .......... 14

     C. Plaintiffs Have Pled Reliance .............................................................. 14

     D. Plaintiffs Have Complied with Fed.R.Civ.P.9(b) ............................... 16

VI.  PLAINTIFFS HAVE STATED CLAIMS FOR PROMISSORY
     ESTOPPEL AND UNJUST ENRICHMENT .......................................... 17

VII. PLAINTIFFS HAVE STATED CLAIMS FOR DISCRIMINATION
     UNDER STATE AND FEDERAL LAW ................................................ 17

A. Plaintiff Peyton Is an Employee of Defendants ...................................17

B. Plaintiff Peyton Has Pled Adverse Employment Actions...................19

CONCLUSION .......................................................................................25

## STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiffs have stated a claim against Defendant, All American Recycling, Inc., for breach of contract to pay sales commissions.

> Plaintiffs answer "Yes."

> Defendants answer "No."

> The Court should answer "Yes."

2.  Whether Plaintiffs have stated a claim against Defendant, All American Recycling, Inc., for violation of the Michigan Sales Representative Commissions Act.

> Plaintiffs answer "Yes."

> Defendants answer "No."

> The Court should answer "Yes."

3.  Whether Plaintiff, Reanna Peyton, has stated a claim against Defendant, All American Recycling, Inc., for breach of contract to pay wages and benefits.

> Plaintiffs answer "Yes."

> Defendants answer "No."

> The Court should answer "Yes."

4.  Whether Plaintiff, Reanna Peyton, has stated a claim against Defendants for breach of contract to provide equitable ownership.

> Plaintiffs answer "Yes."

> Defendants answer "No."

> The Court should answer "Yes."

5.  Whether Plaintiffs have stated a claim against Defendants for fraud.

> Plaintiffs answer "Yes."

Defendants answer "No."

The Court should answer "Yes."

6.  Whether Plaintiffs have stated claims against Defendants for promissory estoppel.

    Plaintiffs answer "Yes."

    Defendants answer "No."

    The Court should answer "Yes."

7.  Whether Plaintiffs have stated a claim against Defendants for unjust enrichment.

    Plaintiffs answer "Yes."

    Defendants answer "No."

    The Court should answer "Yes."

8.  Whether Plaintiff, Reanna Peyton, has stated a claim against Defendants for violation of the Elliott-Larsen Civil Rights Act.

    Plaintiffs answer "Yes."

    Defendants answer "No."

    The Court should answer "Yes."

9.  Whether Plaintiff, Reanna Peyton, has stated a claim against Defendant, All American Recycling, Inc., for violation of Title VII of the Federal Civil Rights Act.

    Plaintiffs answer "Yes."

    Defendants answer "No."

    The Court should answer "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.,* 32 F.Supp.3d 824 (E.D. Mich. 2014)

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)

*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330 (1976)

In *HDC, LLC v. City of Ann Arbor,* 675 F.3d 608 (6th Cir. 2012)

*Jim-Bob, Inc. v. Mehling*, 178 Mich. App. 71 (1989)

*Johnson v USA Underwriters*, 328 Mich. App. 223, 936 NW2d 834, 840 (2019)

*Neason v. Gen. Motors Corp*., 409 F. Supp. 2d 873 (E.D. Mich. 2005)

*Nuffer v. Aetna Life Ins Co*, 2020 WL 12739579 (E.D. Mich. Sep. 1, 2020)

*Ojemudia v. Rite Aid Services, LLC.* 540 F. Supp.2d 855 (E.D. Mich 2008)

*Roberts v Saffell*, 280 Mich App 397 (2008), *aff'd* 483 Mich 1089 (2009)

*Varlesi v. Wayne State University,* 909 F.Supp.2d 827 (E.D. Mich. 2012).

*Wheatley v. W. Cent. Michigan Emp. & Training Consortium, Inc.,* 341 F. Supp. 3d 753 (W.D. Mich. 2018)

## INTRODUCTION

Defendants' Motion is procedurally defective from the outset because it was filed two weeks after the time provided by Fed.R.Civ.P. 15(a)(3) to respond to Plaintiffs Second Amended Complaint, which was filed on July 2, 2024. Defendants' previous failure to comply with this District's Local Rules was the basis for Judge Jonathan J.C. Grey's Order striking their Motion to Dismiss the First Amended Complaint. (ECF No. 24, PageID.191)

Substantively, Defendants' Motion is a retread of their previous Motion to Dismiss filed against the original Complaint (and their stricken Motion to Dismiss the First Amended Complaint), that fails to challenge the Second Amended Complaint ("SAC"). For example, Defendants repeat for the third time their argument that Plaintiffs have not sufficiently described the parties' oral agreements, notwithstanding the additional, more specific allegations in the SAC. Indeed, the primary sections of Defendants' Motion are simply repeated verbatim from their prior Motions.

Plaintiffs have clearly met their burden to plead facts which, taken as true, raise a reasonable expectation that discovery will reveal evidence of their claims. The SAC also satisfies the notice pleading requirements of Fed.R.Civ. P. 8(a)(2). Accordingly, Plaintiffs request that the Court deny Defendants' Motion.

**ARGUMENT**

**DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED**

### Standard of Review

When evaluating a complaint's sufficiency under Rule 12(b)(6), the Court must first accept all of Plaintiffs' factual allegations as true. *See Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). The Court must draw all reasonable inferences in Plaintiffs' favor and determine whether they plausibly give rise to an entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court may only dismiss a complaint "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Apseloff v. Family Dollar*, 236 Fed. App'x 185, 187 (6th Cir. 2007) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). The legal standard of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), cited by Defendants, "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545.

Moreover, under Fed.R.Civ.P.8(a)(2), Plaintiffs' FAC is only required to allege a "short and plain statement of the claim showing that the pleader is entitled to relief." "This simplified notice pleading standard relies on liberal discovery

2

rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). In *HDC, LLC v. City of Ann Arbor*, the Sixth Circuit discussed *Swierkiewicz* and explained that it would be "inaccurate to read [*Twombly* and *Iqbal*] so narrowly as to be the death of notice pleading and [the court accordingly] recognize[d] the continuing viability of the 'short and plain' language of Federal Rule of Civil Procedure 8." 675 F.3d 608, 614 (6th Cir. 2012).

## I.  PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF CONTRACT TO PAY SALES COMMISSIONS

As an initial matter, the cases Defendants cite in support of their arguments on Count I of the SAC are almost exclusively from other jurisdictions, including New York and Texas. (PageID.247-249) Those cases, and the two Michigan cases they cite, *Lawley v. Siemons*, 11-12822, 2011 WL 6000797 (E.D. Mich. Nov. 30, 2011), and *Maraulo v. CitiMortgage, Inc.*, 12-CV-10250, 2013 WL 530944 (E.D. Mich. Feb. 11, 2013), are inapposite because they involve cases in which the plaintiffs failed to allege even the most basic terms of the alleged oral agreements.

Significantly, the *Maraulo* court held that a breach of contract complaint is sufficient if "the allegations…are sufficiently specific to state a claim and to put Defendants on notice of the claim." *Id*. at *10. Defendants acknowledge that the SAC satisfies the notice pleading requirement of Fed.R.Civ.P. 8(a)(2) when they allege that "Plaintiffs' Count I appears to be premised on a breach of a single, oral

3

contract." (PageID.243) While Defendants purport to be confused regarding the specifics of the agreement, they accurately quote the SAC's allegation that Ms. Peyton and Mr. Zambon orally "agreed to become equal partners…in a new brokerage company" and that the "parties 'further agreed that Ms. Peyton was entitled to a sales commission of 50% of brokerage fees from All American, whether or not AARM was operational.'" (PageID.244, quoting ¶¶11-12)[1] Plaintiffs also allege that Ms. Peyton left her prior employer "and joined All American" in reliance upon the parties' agreement. (¶13) Accordingly, Defendants cannot plausibly maintain that the SAC does not place them on notice of Plaintiffs' claims.

Nevertheless, Defendants assert that the SAC is deficient because it does not identify the oral contract sued upon, the date of the contract, the location where the contract was formed, or the specific terms of the contract. (PageID.247) But Defendants cite no case law, let alone any Michigan cases, establishing that such allegations must be pled.  Indeed, Defendants themselves acknowledge that, to state a claim for breach of contract, Plaintiffs must only plead that the parties were competent to contract, the proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *Id*. The date, location, or specific terms are not among these elements. And the *Maraulo* case identifies "all elements necessary

---

[1]  Unless otherwise noted, all paragraph references are to the SAC.

to plead a breach of contract claim: (1) a contract; (2) the terms of the contract require performance of a particular action; (3) a breach; and (4) damages", further establishing that the myriad other elements Defendants assert must be pled are not required. *Maraulo*, *supra*, at *11.

Even if Defendants were correct, however, Plaintiffs *have* sufficiently identified the oral contract, as well as the date and location it was formed and its specific terms. For example, the SAC alleges that Ms. Peyton and Mr. Zambon formed the oral agreement for equitable ownership and payment of sales commissions on April 11, 2019, at an in-person meeting in Chicago, Illinois. (¶¶10-11) The terms of the agreement are also specifically alleged: the parties "agreed to become equal partners…in a new brokerage company", that "all materials sold from All American would move through [the new company] and the partners would each net 50% of the brokerage fees from such sales" (¶11-12), and Ms. Peyton left her prior position and joined All American while AARM was being created (¶13).

Moreover, Plaintiffs have alleged all of the elements of the breach of contract: that the parties are legally competent (¶¶1-4), there was consideration in the form of Ms. Peyton leaving her former job to join Mr. Zambon and the deployment of her network of consumer relationships and skills as a broker for the benefit of the new enterprise (¶¶9-13, 67), the agreement was mutual with regard to obligations because Ms. Peyton committed to offer her broker services

exclusively for the new company in exchange for an ownership interest and an equal payment of the brokerage fees (¶¶10-13), and the agreement was breached by Defendants (¶¶63, 70-72).

Defendants' assertion that Plaintiffs have alleged the formation of twelve of more oral agreements (PageID.243) is inconsistent and disingenuous. First, the argument contradicts Defendants' position that "Plaintiffs' Count I appears to be premised on a breach of a single, oral contract." *Id*. Second, what Defendants describe as additional agreements are clearly alleged as confirmations of the April 2019 agreement. *See, e.g.*, ¶29 (March 2020: sales to be processed through All American "as AARM was still not fully set up."); ¶¶32-33 (May-July 2020 Mr. Zambon repeatedly confirmed sales commissions would be paid to Ms. Peyton); ¶38 (April 2021: Mr. Zambon representing sales commissions would be paid to Ms. Peyton out of proceeds from the 15 Seconds of Fame entity); ¶44 (late 2021 text message confirming agreement); ¶¶48-49 (September 2022 in-person meeting confirming agreement with timeline for payment of sales commissions beginning January 1, 2023); ¶51 (late 2022, Mr. Zambon confirms Ms. Peyton's sales commissions will be paid and directs her to take funds for a down payment on a new home from All American as an advance); ¶53 (partial sales commission payments from All American); ¶¶56-57: (April 2023 email from Ms. Peyton to Mr. Zambon memorializing agreement terms, followed by his agreement to meet in

person); ¶¶58-60 (May 2, 2023 in-person meeting between Ms. Peyton and Mr. Zambon in Joliet, Illinois where he agreed to pay sales commissions owed); ¶¶61-62 (May 2023: Mr. Zambon's counsel contacts Ms. Peyton requesting enumeration of sales commissions owed).

To the extent that Plaintiffs have alleged other oral agreements, they have been described separately. For example, the SAC alleges the parties' additional agreement that Ms. Peyton would serve as acting interim CFO of All American, and she would be paid a separate salary and benefits for that work (¶¶24-25). The separate agreements are further reflected in the counts of the SAC: Count I (breach of contract to pay sales commissions); Count III (breach of contract to pay wages and benefits); and Count IV (breach of contract for equitable ownership).

Finally, Defendants contend that Plaintiffs have not pled facts specific to each of the parties. (PageID.247-248) But Plaintiffs have alleged such facts regarding both Ms. Peyton and R. Peyton Consulting LLC ("Peyton Consulting") versus All American Recycling, Inc. For example, Plaintiffs allege that Ms. Peyton and Mr. Zambon agreed to become partners in a new brokerage company. (¶11) Plaintiffs allege that the parties' oral agreement provided Ms. Peyton was entitled to brokerage fees from All American's sales, and that Ms. Peyton joined All American. (¶¶12-13) Additionally, the FAC alleges that "All American, through its President Mr. Zambon, agreed to pay Ms. Peyton sales commissions, either

7

directly to Ms. Peyton or to her company, Peyton Consulting, based on sales of all brokered material." (¶67) Defendants fail to cite case law requiring additional specificity at the pleading stage.

Defendants' argument that Plaintiffs do not allege an agreement with Peyton Consulting also fails. The SAC alleges that "Mr Zambon instructed Ms. Peyton to create a legal entity which would receive some or all of the commission payments from All American. Accordingly, Ms. Peyton created Peyton Consulting, LLC., which became a party to Ms. Peyton's oral agreement with Mr. Zambon for sales commissions." (¶16) And All American is alleged to have agreed to pay Ms. Peyton commissions either directly to her "or to her company, Peyton Consulting". (¶¶67, 75)

## II.   PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE MICHIGAN SALES REPRESENTATIVE COMMISSION ACT

Defendants make the same arguments regarding the alleged lack of adequate allegations in response to Plaintiffs' claim under the Michigan Sales Representative Commissions Act ("MSRCA"). (PageID.249-251) Plaintiffs have already responded above to those arguments and case law.  Defendants' only other argument, that Plaintiffs "never allege that an agreement was formed between a defendant and Plaintiff Peyton Consulting LLC" with regard to the MSRCA is rebutted by the specific allegations in Count II cited previously, including that "Defendant, through its President Mr. Zambon, agreed to pay Ms. Peyton

'commissions' either directly to her or through her company, Peyton Consulting, as defined in the MSRCA, MCL §§ 600.2961(1)(a)." (¶75) Coupled with the allegation that Mr. Zambon is the one who instructed Ms. Peyton to set up Peyton Consulting in order to receive payments from All American (¶16), Plaintiffs have adequately alleged an agreement between "a defendant" and Peyton Consulting.

## III.   PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF CONTRACT TO PAY WAGES AND BENEFITS

Defendants assert that "Plaintiffs [sic] Count III fails for essentially the same reason as Counts I and II." (PageID.251) As noted above, Plaintiffs have already responded to Defendants' arguments and case law. Defendants additionally focus on the parties' oral agreement that Ms. Peyton would be paid wages and benefits for performing the role of CFO and human resources officer for All American and other entities controlled by Mr. Zambon, arguing that the supporting allegations are insufficient. (PageID.251-252)

Defendants ignore the SAC allegations establishing breach of contract, such as the allegations stating that Mr. Zambon hired Ms. Peyton as acting interim CFO of All American in late 2019 (¶¶24-25) and later to take on similar responsibilities, including human resources-oriented responsibilities, for specific, named other entities. (¶¶26-27 (West End Tool & Die, Inc. (early 2020)), ¶33 (Elite Metals and Sani-Spire (June and July 2020)), ¶36 (Chic Properties (early 2021), ¶39 (Solux Development (April 2021)), and ¶52 (Alpha Products (late 2022)). Further,

Plaintiffs specifically allege that Mr. Zambon and Ms. Peyton "agreed that Ms. Peyton would be paid an increased salary, from All American, reflecting her expanded responsibilities once the company had navigated the COVID period." (¶31) Plaintiffs also allege that the consideration for the agreement to perform executive functions was wages and benefits for her work at All American (¶82) and at the other named entities (¶83), and that All American breached the agreement by failing to pay (¶¶84-85).

## IV.   PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF CONTRACT FOR EQUITY OWNERSHIP

Defendants argue that Count IV should be dismissed for three unsupported reasons. (PageID.252-253) First, Defendants reassert their contention that Plaintiff's allegations were sufficiently specific. As with the prior Counts, however, the SAC clearly sets out allegations of breach of contract with sufficient specificity: on April 11, 2019, Mr. Zambon agreed that he and Ms. Peyton would "become equal partners…in a new brokerage company, All American resource management ("AARM")" and that Ms. Peyton "would be entitled to 50% of brokerage fees upon arrival, whether or not AARM was operational." (¶¶10-12, 87)

Second, Defendants reassert in conclusory fashion that "Plaintiffs have not pled the elements of a breach of contract action." (PageID.253) But Defendants do not cite any specific elements that were not adequately pled. The non-Michigan

10

cases they cite, including *Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*, CIV. 13-00669 HG-BMK, 2014 WL 2761744 (D. Haw. June 18, 2014), involve pleadings with such vague allegations that they have no application here.

Nevertheless, as with their other claims, Plaintiffs' allegations satisfy all of the elements of breach of contract for Count III: the parties were legally competent (¶¶1-4), the parties "entered into an oral agreement that Ms. Peyton would receive 50% ownership in AARM, which was to serve as the brokerage arm of All American" (¶87), there was consideration for the agreement (¶¶9-13), the parties' obligations were mutual (¶¶11-15), Defendants breached the agreement (¶89), and Plaintiffs suffered damages as a result of the breach (¶90). *See also* argument *supra*, regarding each of the elements pled for Counts I and III.

Third, Defendants again complain that Plaintiffs have not alleged how "*each* of the two Defendants engaged in conduct that would make *each* of them liable to each of the two Plaintiffs." (PageID.253) Defendants have apparently overlooked that Count IV is alleged by Ms. Peyton only, not by Peyton Consulting. Moreover, Ms. Peyton alleges that Mr. Zambon, *individually and in his capacity as President of All American*, agreed that she "would receive 50% equity ownership in AARM, which was to serve as the brokerage arm of All American." (¶87) Both Defendants are alleged to have breached that agreement. (¶¶89-90)

11

## V.    PLAINTIFFS HAVE STATED A CLAIM FOR FRAUD

Defendants' boilerplate arguments regarding Plaintiffs' fraud claims (PageID.253-256) are based exclusively on Illinois law: they cite no Michigan case law at all. Even if Defendant had forwarded arguments grounded in Michigan law, however, they would still fall short. Plaintiff has pled the following elements of a civil fraud claim in Michigan are as follows:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Johnson v USA Underwriters*, 328 Mich. App. 223, 936 NW2d 834, 840 (2019).

### A.    Plaintiffs Have Pled Fraud Related to Existing Facts

Defendants argue initially that the alleged misrepresentations by Mr. Zambon concern only future intent or conduct. (PageID.253-254) But that is not the case. The statements relied upon by Ms. Peyton were related to "existing facts": Mr. Zambon, after working with Ms. Peyton in her role as Vice President and head broker for Rivore Metals, Inc., misrepresented that based on his knowledge of All American's *existing business* and her existing compensation, she would immediately improve her compensation by working with him. (¶¶7-10) In addition, Mr. Zambon represented that it was possible for materials sold by All American *at*

12

*that time* to be routed through a new brokerage company (AARM), for the benefit of both of them. (¶¶10-13) Mr. Zambon also represented that their agreement meant that Ms. Peyton "was entitled" to equal ownership of AARM and a sales commission of 50% of brokerage fees, factual representations about her *existing* rights. (¶¶11-12) Based on those misrepresentations of existing facts, Ms. Peyton quit her lucrative position at Rivore Metals and joined All American. (¶13)

In any event, "Michigan courts recognize three exceptions to the general rule that promises of future performance are not actionable as fraudulent misrepresentations: the bad-faith exception…, the false-token exception…, and the relationship of trust and confidence exception…." Pappas, McNeill, and Quick, *Michigan Business Torts*, Second Edition § 6.9 (The Institute of Continuing Legal Education). *See also Jim-Bob, Inc. v. Mehling*, 178 Mich. App. 71, 90; 443 N.W.2d 451 (1989) (bad faith exception); *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 339; 247 N.W.2d 813 (1976) (false token exception).

Defendants never mention these exceptions, let alone present arguments that they do not apply here. Plaintiffs have alleged facts supporting at least two of the three exceptions. For example, the SAC alleges that Mr. Zambon's conduct contemporaneous with his agreement to pay sales commissions to Ms. Peyton is evidence that he had no intention of following through, supporting the bad faith exception to the future performance rule: Mr. Zambon never took the steps

necessary to finalize the creation of AARM, and he constantly added to her responsibilities as interim CFO of All American and his other entities in an attempt to use her expertise until she understood that he intended to avoid paying her the sales commissions she was owed. (¶¶24-27, 33, 36, 39-40)

Similarly, Plaintiffs have alleged facts that support application of the false-token exception because Mr. Zambon's promise to pay Ms. Peyton sales commissions was the device used to accomplish the fraud, which consisted of presenting the AARM partnership as bait to use Ms. Peyton's expertise in support of his various entities as long as possible without paying her the commissions. *Id*.

### B.    Plaintiffs Have Pled Fraud Outside of Contractual Conditions

Defendants also assert that Plaintiffs' fraud claims should be dismissed because they are a repeat of the breach of contract claims and "Plaintiffs do not plead any facts outside of the oral contract's conditions". (PageID.255-56) The SAC, however, alleges far more than a breach of contract.  For example, it alleges that Mr. Zambon knew his continuing and repeated statements that he would pay her past due sales commissions were false when made, and that he made the statements with the intent to defraud Plaintiffs. (¶¶94-95, 100-101) These allegations take Plaintiffs' fraud claims beyond breach of contract.

### C.    Plaintiffs Have Pled Reliance

Defendants allege that Plaintiffs fail to plead facts "showing that they

reasonably relied upon any of the statements at issue" (PageID.256), but they have not established that reasonable reliance is required. *See Johnson v USA Underwriters; See also Roberts v Saffell*, 280 Mich App 397, 403; 760 NW2d 715 (2008), *aff'd* 483 Mich 1089 (2009) (reasonable reliance not an element of fraud).

In any event, the SAC specifically alleges that Ms. Peyton relied on Mr. Zambon's misrepresentations. (¶¶96, 102) The FAC further details myriad facts that support reliance. For example, Ms. Peyton left her prior employment "in reliance on Mr. Zambon's statements" (¶¶13-14), she agreed to take on more tasks "in reliance on" assurances of payment (¶33), she agreed to a potential sale of All American as long as it excluded the AARM brokerage business and Mr. Zambon agreed (¶44), she informed Mr. Zambon that she would cease work unless she was paid, which caused him to sweeten their arrangement and begin payments "and she proceeded in reliance on Mr. Zambon's statements" (¶48-50), she made a down payment on her home using funds owed to her by All American at Mr. Zambon's instruction "in reliance on Mr. Zamon's statements and the parties' oral agreement for sales commissions" (¶51), and she agreed to continue in her broker role "in reliance on Mr. Zambon's acceptance of the conditions" and that she would be paid her commissions owed (¶¶58-59).

Defendants contend, again citing only Illinois law, that Ms. Peyton's reliance cannot have been reasonable because Mr. Zambon failed to pay her as promised

15

over a period of years. (PageID.256) This is a fact issue, raised prematurely on a Motion to Dismiss. Moreover, Plaintiffs have pled that Mr. Zambon always paid Ms. Peyton her base annual salary of $250,000, that he continued to acknowledge her entitlement to sales commissions, and that he did pay her some of her commissions. Under these circumstances, it is manifestly plausible that she reasonably relied on his assurances that she would be fully paid what she was owed.

### D. Plaintiffs Have Complied with Fed.R.Civ.P. 9(b)

There is no basis to conclude that Plaintiffs have not complied with the pleading requirements of Fed.R.Civ.P. 9(b). The court in *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984), held that "a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied" to comply with Rule 9(b). *See also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100–1101 (6th Cir. 2011) (requirements for pleading fraud).

Here, Plaintiffs have alleged each of Defendants' misrepresentations in the SAC's detailed timeline of statements and events. As previously cited, the SAC alleges that Mr. Zambon's conduct contemporaneous with his agreement to pay sales commissions to Ms. Peyton is evidence that he had no intention of following through: Mr. Zambon never took the steps necessary to get AARM off the ground, he schemed to use her expertise until she understood that he intended to avoid paying her the sales commissions, and his promise to pay sales commissions was

16

the device used to accomplish the fraud of dangling AARM to obtain Ms. Peyton's efforts and expertise in support of his various entities as long as possible before she realized he never intended to pay her what she was owed. (¶¶24-27, 33, 36, 39-40)

## VI.   PLAINTIFFS HAVE STATED CLAIMS FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT

Defendants' sole argument regarding Plaintiffs' equitable claims for promissory estoppel and unjust enrichment is that they are inconsistent with Plaintiff's breach of contract claims. (PageID.256-259) It is well established that equitable claims may be pled in the alternative to breach of contract claims. *See Bowlers' Alley, Inc. v. Cincinnati Ins. Co.,* 32 F.Supp.3d 824, 833-834 (E.D. Mich. 2014).  Moreover, the *Lawley* case, cited repeatedly by Defendants with regard to breach of contract, acknowledges that unjust enrichment can be pled as an alternative claim. "Having determined that Plaintiff fails to state a claim for breach of an express or implied contract in fact, the Court turns to Plaintiff's claim for unjust enrichment." *Lawley supra*, at *17.

## VII.   PLAINTIFFS HAVE STATED CLAIMS FOR DISCRIMINATION UNDER STATE AND FEDERAL LAW

### A.   Plaintiff Peyton Is an Employee of Defendants

Defendants claim that Ms. Peyton is not entitled to the protections of either the Elliott-Larsen Civil Rights Act ("ELCRA") and Title VII of the Civil Rights Act ("Title VII") because she purportedly was an independent contractor and not an

employee. (PageID.259-260) This argument is appropriate at the summary judgment stage, making it premature here given that Plaintiffs' well-pled allegations must be taken as true for purposes of this Motion.

Defendants point to Ms. Peyton's allegation that the parties agreed she would be an "equal partner" with Mr. Zambon in AARM, but this argument only works if Defendants are estopped from denying that they promised her such a partnership agreement. But Ms. Peyton's allegation of a right to an equal partnership does not mean that she was not treated as an employee by Defendants for purposes of her discrimination claims, as she alleges she was. (¶¶122-123, 145) Defendants have cited no statutory provision or case law to the contrary. It is also well established that the terms of an agreement are not determinative of a party's status as an employee or independent contractor. *See e.g., Wheatley v. W. Cent. Michigan Emp. & Training Consortium, Inc.,* 341 F. Supp. 3d 753, 764 (W.D. Mich. 2018).

Finally, even if the Court applies the common law of agency test for distinguishing between employees and independent contractors for Title VII claims at the pleading stage, the relevant factors, which are applied on a case-by-case basis, all support Ms. Peyton's employee status. *Wheatley, supra,* 341 F. Supp. at 764. Ms. Peyton has repeatedly alleged that was paid both as a 1099 independent contractor and as a W-2 employee and received wages and benefits as an employee of All American, such as health insurance, access to a residence in Chicago, and a leased

vehicle. (¶¶32, 34, 37, 82-83, and 105) She may have been an independent contractor with regard to AARM, but she was treated as an employee by Defendants as to the other companies. *See e.g., Brower v. W.H. Isgrigg & Son*, 216 Mich. 365, 366-67 (1921). Defendants' citation of *Amadou v. J.B. Hunt Transp.*, 2008 WL 4323735 (D. Minn. Sept 17, 2008), is inapposite because the plaintiff there did not allege he was an employee of defendants. *Id.* at *2. Here, Ms. Peyton has expressly alleged that Defendants were her employers under ELCRA and Title VII. (¶¶122-123, 145)

With regard to ELCRA, the "economic reality test" is used to determine whether an employment relationship exists. *Varlesi v. Wayne State University,* 909 F.Supp.2d 827, 843 (E.D. Mich. 2012). The test's four factors are: (1) control of a worker's duties; (2) payment of wages; (3) right to hire, fire, and discipline; and (4) performance of the duties as an integral part of the employer's business toward accomplishment of a common goal. *Id.* Here, as above, all four factors support Ms. Peyton's status as an employee, especially regarding work she did unrelated to commission work for AARM.

## B.   Plaintiff Peyton Has Pled Adverse Employment Actions

Defendants also argue that Ms. Peyton has allegedly failed to sufficiently plead the required adverse employment action. (PageID.260-263) Despite Defendants' claim to the contrary, "there is no exhaustive list of what constitutes adverse employment actions. And what might constitute an adverse employment

action in one employment context might not be actionable in another employment context." *Chen v. Wayne State Univ.,* 284 Mich. App. 172, 201 (2009) (citations omitted). Ms. Peyton has pled a number of adverse employment actions taken against her by Defendants, with some set forth in detail in ¶135.

Defendants' reliance on *Pena v. Ingham Cnty. Rd. Comm'n,* 255 Mich. App. 299 (2003) and *Slanaker v. AccessPoint Employment Alternatives, LLC.,* 2008 WL 408519 (E.D. Mich. Feb. 13, 2008), is misplaced.  Defendants argue that adverse employment actions as to both ELCRA and Title VII typically take "the form of an *ultimate employment decision*". (PageID.260; emphasis added) But *Pena* is not controlling, and the case was yellow flagged by *Neason v. Gen. Motors Corp*., 409 F. Supp. 2d 873, 878–79 (E.D. Mich. 2005), where the District Court explained that the Sixth Circuit in *White v. Burlington Northern*, 364 F.3d 789 (6th Cir. 2004), rejected the "ultimate employment decision" standard for Title VII claims and also found that, "In the interest of providing a broad remedy, and in consideration of the weight of Title VII precedent, it is likely that the Michigan Supreme Court would reject the "ultimate employment decision" standard for Elliott-Larsen claims." *Neason,* 409 F, Supp, 2d at 878-879. *Neason* is controlling.

Moreover, as discussed in detail below, Ms. Peyton has alleged adverse employment actions related to her terms of employment, including a sexually hostile working environment, receiving compensation less than comparable men, being

ostracized from events and communications, which hindered her management responsibilities, and being refused the ability to partner in other ventures with Mr. Zambon. (SAC, ¶¶ 127-135, 146-147, 149-150) *See Conti v. Am. Axle.,* 326 F. App'x 900, 911-12 (6th Cir. 2009) (paying a woman a smaller salary than a similarly situated man qualifies as an adverse action under ELCRA); *Chen,* 284 Mich. App. at 202 (restricting plaintiff's ability to do job properly is an adverse employment action).

Defendants rely on *Slanaker* for the proposition that Ms. Peyton has not established that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." (PageID.260-261) Again, this is a summary judgment argument. Even so, as held in *Burns v. Johnson*, 18 F. Supp. 3d 67 (D. Mass. 2014), a pattern of comments indicating prejudice toward the plaintiff's protected class may constitute direct evidence of discriminatory animus if they are sufficiently widespread and offensive.

Defendants totally ignore all of the facts pled in the SAC evidencing a pattern of comments indicating prejudice toward women, including, but not limited to, that Ms. Peyton was the only women in a management position; her working conditions were permeated with sexual harassment; the existence of direct evidence of the anti-women animus through use of terms like "cunts", "pussies", "nasty bitches", the making of "cat calls", frequently receiving pictures of penises and naked men, being

excluded from company events, group texts that were open only to male management members, and being explicitly told by Mr. Zambon that he could no longer do business with her because she was a woman. *See e.g.,* ¶¶64, 126, 127 (A)-(M), 128-134, 135 (A)-(F), and 139. *Slanaker,* by contrast, only involved a "vague and stray remark". *Slanaker,* 2008 WL 408519, at *6.

In addition, Defendants' argument that each of Ms. Peyton's six allegations of adverse employment actions are insufficient is without merit. (PageID.260-263) First, Defendants acknowledge that she has expressly pled the existence of sexually hostile working conditions as one example of the adverse employment actions that she faced (PageID.261)*,* but they declare with no supporting authority that a "hostile work environment" is not an adverse employment action because it does not "affect the *employment status* of a plaintiff." *Id*. However, it is undisputed that both Title VII and ELCRA provide that an employee can establish discrimination as a result of the creation of a hostile or abusive work environment based on sex. *See Ojemudia v. Rite Aid Services, LLC.* 540 F. Supp.2d 855, 865-866 (E.D. Mich 2008). This is particularly true here, where Mr. Zambon not only failed to stop the harassment, but participated in it himself.

Second, Ms. Peyton alleges that she was not paid commissions for the work she performed for All American. Defendants argue (1) that she was an independent contractor; (2) that Peyton continued to work for Defendants for four years without

being paid her full commissions. (PageID.261) It is well established that paying a woman a smaller salary than a similarly situated man qualifies as an adverse action for purposes of the ELCRA and Title VII. *See e.g., Conti, supra*. And, as discussed above, Ms. Peyton was not only an independent contractor.

Third, Ms. Peyton alleges adverse employment action because she received lower compensation than similarly situated males. *See e.g., ¶¶*129, 130, and 131. Defendants challenge this, stating (again with no support) that there was no *change* in her circumstances. (PageID.261-262) This is not the standard. An employer cannot discriminate against a woman on day one and avoid liability by maintaining the discrimination existed from the start. Here, Ms. Peyton discovered that a male employee had long been paid more than her (¶130), and that the male who replaced her as CFO for All American alone, with significantly less experience and was performing many fewer job duties, was paid nearly as much. (¶131) In each of these instances, Ms. Peyton was treated significantly worse than male employees solely because of her gender. This is clearly actionable under Title VII and ELCRA.

Fourth, Defendants' arguments regarding Ms. Peyton's allegations that she did not receive the promised equity ownership in any of Mr. Zambon's entities despite such ownership being provided to men also fail. (PageID.262-263). These allegations are far from conclusory: see, for example, Ms. Peyton describes in detail a partnership deal that Mr. Zambon made with a new male employee, that was

similar to one promised, and reneged on, with her (¶134). Further, Ms. Peyton identified a change in circumstances when she specifically alleged that Mr. Zambon announced that he could not partner with her after all because she was a woman, despite entering into equity partnerships with less experienced and less qualified male employees. *Id.*

Fifth, Defendants maintain that Ms. Peyton's allegations regarding differential compensation do not constitute an adverse employment action because, after agreeing agreed she would only be the "acting interim CFO," she cannot complain about her replacement, and she would only have a claim if the new CFO was paid more rather than "close to [her] salary". (PageID.262-263) Plaintiff is not arguing about being replaced, however: she alleges she was effectively paid less than her male replacement. (¶135(E)) Defendants' argument also ignores the significant differences in the amount of experience Ms. Peyton had over her replacement (¶54) and the extensive, additional job duties she performed for the same salary (¶55).

Sixth, Ms. Peyton alleges that her ability to perform her job was significantly hindered by being routinely excluded from company meetings, events, and group text messages. *See e.g., ¶¶*64, 132, 133. Again, Defendants' only defense is the asserted lack of change in how she was treated. But Ms. Peyton has pled how this conduct interfered with her ability to perform her job duties and undermined her management role. (¶¶139,146) As such, she has sufficiently pled an adverse

employment action. *See Chen*, 284 Mich. App. at 202.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' Motion. If the Court determines that Plaintiffs' allegations are legally insufficient, however, Plaintiffs respectfully request leave to amend their Second Amended Complaint, as Fed. R. Civ. P. 15(a)(2) provides that "the court should freely give leave when justice so requires."

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

  */s/ Kevin F. O'Shea*
Kevin F. O'Shea (P40586)
Devon P. Allard (P71712)
950 West University Drive
Rochester, MI 48307
(248) 841-2200
kfo@millerlawpc.com
dpa@millerlawpc.com

*Attorneys for Plaintiffs*

Dated: August 13, 2024

## CERTIFICATE OF SERVICE

I certify that on August 13, 2024, the foregoing document was served on all parties or their counsel of record through the Court's CM/ECF system, which will send notification of this filing to all registered users.

  /s/ *Kevin F. O'Shea*